Derek W. Loeser, WSBA #24274
Gretchen Freeman Cappio, WSBA #29576
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

Chanele N. Reyes, WSBA #46712
**KELLER ROHRBACK L.L.P.**
3101 N. Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

Alison E. Chase, *pro hac vice*
Matthew J. Preusch, *pro hac vice*
**KELLER ROHRBACK L.L.P.**
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
SPOKANE DIVISION

| | |
|---|---|
| MONTY AND MICHELLE COORDES, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>     v.<br><br>WELLS FARGO BANK, N.A.,<br><br>                              Defendant. | Case No. 2:19-cv-00052-TOR<br><br>SECOND AMENDED CLASS ACTION COMPLAINT<br><br>Chief Judge Thomas O. Rice |

SECOND AMENDED CLASS ACTION
COMPLAINT

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   JURISDICTION AND VENUE ...........................................................3

III.  PARTIES ...............................................................................................3

IV.   FACTUAL ALLEGATIONS ................................................................4

A.    The Coordeses Lose Their Home Due to Wells Fargo's
      Conduct........................................................................................4

      1.    Monty and Michelle Coordeses' Home is
            Foreclosed Upon ..............................................................4

      2.    After Years of Concealment, Wells Fargo Finally
            Admits to the Coordeses that it Wrongly Denied
            Their Mortgage Modification and Wrongfully
            Foreclosed Upon Their Home.........................................10

B.    Wells Fargo's Deficient Mortgage Servicing and
      Foreclosure Practices Result in the Wrongful
      Foreclosures of Hundreds of Homes .........................................11

      1.    Wells Fargo's Lengthy History of Deficient
            Mortgage Practices and Broken Promises ......................11

      2.    Wells Fargo's Pattern of Reckless and Unlawful
            Mortgage Servicing Allows a Software Error to
            Deny Mortgage Modifications that Should Be
            Approved.........................................................................17

      3.    Wells Fargo Discovers the Error in its
            Modification Analysis, but Conceals the Problem .........20

C.    Wells Fargo Finally Admits its Error After a Five-Year
      Concealment...............................................................................22

D.    Wells Fargo's Long History of Chronic and Intentional
      Lack of Central Oversight ..........................................................25

SECOND AMENDED CLASS ACTION
COMPLAINT- i

V.     CLASS ACTION ALLEGATIONS ............................................................27

VI.    STATUTES OF LIMITATIONS ...............................................................31

       A.     Discovery Rule ..........................................................................31

       B.     Equitable Tolling .......................................................................32

       C.     Estoppel .....................................................................................32

VII.   CAUSES OF ACTION.............................................................................33

VIII.  REQUEST FOR RELIEF..........................................................................46

IX.    DEMAND FOR JURY TRIAL ................................................................47

SECOND AMENDED CLASS ACTION
COMPLAINT- ii

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# I.    INTRODUCTION

1.      Plaintiffs Monty and Michelle Coordes bring this lawsuit on behalf of themselves and a proposed nationwide class of other similarly-situated homeowners who were wrongfully denied a mortgage modification by Defendant Wells Fargo Bank, N.A. ("the Bank" or "Wells Fargo"). Due to a serious error in mortgage modification software used by Wells Fargo (which related to attorneys' fee calculations), over 900 homeowners were wrongfully denied modification of their mortgages, and at least 545 of these borrowers lost their homes as a result.

2.      The Bank admits that it wrongly denied hundreds of homeowners modifications to which they were entitled. The Bank admits, moreover, that it wrongfully took the homes of hundreds of borrowers. However, Wells Fargo does not deserve praise for its admission. Quite the opposite: for years Wells Fargo concealed its wrongful denial of modification applications from Plaintiffs and other affected homeowners. The Bank only revealed its conduct under pressure from federal regulators. In fact, upon information and belief, Wells Fargo learned of the error in 2013 but waited until 2018 – roughly *five years* – to come clean.

3.      This was not a simple case of an isolated software error. No later than 2011, Wells Fargo Bank was made aware, following an investigation by the Office of the Comptroller of the Currency and other federal agencies, that its mortgage modification and foreclosure processes had not been subject to adequate testing, that it had failed to adequately audit its foreclosure procedures, and that it had failed to ensure compliance with applicable law. Wells Fargo was warned, specifically, about deficiencies in its calculation of fees charged to borrowers. Both Defendant Wells Fargo Bank, N.A. and its parent company, Wells Fargo & Co., signed Consent Orders agreeing to implement appropriate procedures to rectify

SECOND AMENDED CLASS ACTION
COMPLAINT- 1

these grave deficiencies in their mortgage servicing, foreclosure, and modification practices, to strengthen the oversight of the same, and to devote adequate resources to those efforts.

4.      But Wells Fargo broke its promises. Four years later, in 2015, the OCC found that Wells Fargo was still not complying with substantial and important provisions of the Consent Orders. Wells Fargo nevertheless failed again to comply for years, resulting in the OCC issuing a 2018 Cease and Desist Order and a massive fine for shoddy mortgage practices. In short, Wells Fargo was on notice that its practices were faulty, but it failed to act, despite the potential grievous consequences to its customers and its promises to federal regulators to clean up its act.

5.      This case is about much more than a single software problem that resulted in one family losing their home. This case is about the practices that led to hundreds of wrongful foreclosures and the lengthy concealment of an error that led to hundreds of families losing their homes. And this case is about a bank, Wells Fargo, that repeatedly and willfully failed to implement appropriate mortgage servicing and foreclosure practices, despite years of regulatory oversight and broken promises. This is not about an accident, but the result of years of willful and reckless lack of oversight by Wells Fargo, resulting in repeated compliance breakdowns and billions of dollars in government fines.

6.      Therefore, to hold Wells Fargo accountable for its wrongful practices and concealment of its wrongdoing, Plaintiffs allege the following based on publicly available information, investigation of Counsel, and information and belief.

SECOND AMENDED CLASS ACTION
COMPLAINT- 2

## II.    JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from Defendant, there are 100 or more Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendant, a substantial portion the alleged wrongdoing occurred in this District and the state of Washington, and Defendant has sufficient contacts with this District and the state of Washington.

9.    Venue is proper in the Eastern District of Washington pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District. The Plaintiffs reside in Spokane County; thus, the Spokane Division is proper.

## III.    PARTIES

10.    Monty and Michelle Coordes are residents and citizens of Spokane Valley, Washington. They are among the millions of homeowners affected by the economic crisis of the Great Recession. They sought a mortgage modification for their home in Spokane Valley in 2011 that Wells Fargo wrongfully denied. As a result, they lost their home to foreclosure.

11.    Defendant Wells Fargo Bank, N.A. is a national banking association chartered under the laws of the United States with its primary place of business in Sioux Falls, South Dakota. Wells Fargo Bank, N.A. provides personal and commercial banking services, engages in mortgage lending, and is the principal subsidiary of Wells Fargo & Co., a financial service company with $1.9 trillion in

SECOND AMENDED CLASS ACTION
COMPLAINT- 3

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

assets and approximately 271,000 employees that provides banking, insurance, and mortgage services.

12.    Wells Fargo Bank, N.A. is the successor by merger to Wells Fargo Home Mortgage, Inc., and includes the division Wells Fargo Home Mortgage.

## IV.    FACTUAL ALLEGATIONS

**A.    The Coordeses Lose Their Home Due to Wells Fargo's Conduct**

   **1.    Monty and Michelle Coordeses' Home is Foreclosed Upon**

13.    In 2005, Monty and Michelle Coordes built a new home in Spokane Valley, Washington.  The home was secured by a mortgage with Sierra Pacific Mortgage Company, Inc. for $198,400. Exhibit A. Wells Fargo serviced that loan. In May 2011, Wells Fargo also acquired the note to the Coordeses' home, pictured here:



**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

14.     In early 2010, Mr. Coordes became temporarily unemployed. Specifically, on February 16, 2010, Mr. Coordes's position as an aircraft program manager was eliminated by his company because of the economic downturn.

15.     The loss of Mr. Coordes's employment caused a loss of income to the Coordes family of approximately $10,000 per month and created economic uncertainty for the Coordeses.

16.     The day after Mr. Coordes received the news his job was eliminated, the Coordeses contacted Wells Fargo to seek assistance making their mortgage payments. The Coordeses specifically requested relief in the form of a mortgage loan modification. The Bank advised the Coordeses to miss three payments before they could qualify for relief. Despite concerns for their credit, and desperate to keep their home, the Coordeses deliberately missed the requisite payments.

17.     On July 18, 2010, Monty Coordes accepted full-time employment with the Federal Aviation Administration in Long Beach, California. To hold this position, Mr. Coordes commuted between Washington and California until he was able to secure a permanent assignment in Washington. During this same period, Michelle Coordes continued to reside in the home and was continuously employed by a private aviation company in Spokane, Washington.

18.     In August 2010, Wells Fargo offered the Coordeses a trial modification.  In November 2010, they were forced to exit the trial plan period because, while the Coordeses could afford a reduced payment, Wells Fargo requested payment of past due amounts and penalties, which was beyond the Coordeses' financial ability. As a last-ditch effort to avoid foreclosure, the Coordeses requested a short sale in November 2010, which was declined.

19.     In late 2010, the Coordeses met with a bankruptcy attorney. They did so based upon a Wells Fargo representative's suggestion they may be able to save

SECOND AMENDED CLASS ACTION
COMPLAINT- 5

their home by entering Chapter 13 bankruptcy. After much consideration, the Coordeses sought protection under Chapter 13 of the Bankruptcy Code on January 14, 2011.

20.    The Coordeses' bankruptcy plan was approved in May 2011. Following that approval, the Coordeses again began seeking a mortgage modification that would allow them to save their home.

21.    On July 27, 2011, the Coordeses entered a new modification review with Wells Fargo. By this point in 2011, the Coordeses' combined incomes were sufficient to make their mortgage payment, a fact the Coordeses repeatedly explained to the Bank.[1]

22.    The Coordeses completed the documents for the modification to the best of their abilities. Like every borrower who applied for this relief, they did so in light of grave warnings regarding any misstatements in this process.  In return for their honesty and commitment, the Coordeses reasonably expected to receive the same back from Wells Fargo.  The documents signed by the Coordeses and provided to Wells Fargo read:

**NOTICE TO BORROWERS**

Be advised that by signing this document you understand that any documents and information you submit to your servicer in connection with the Making Home Affordable Program are under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy in your home, hardship circumstances, and/or income, expenses, or assets will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution. By signing this document you certify, represent and agree that: "Under penalty of perjury, all documents and information I have provided to Lender in connection with the Making Home Affordable Program, including the documents and information regarding my eligibility for the program, are true and correct."

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by calling 1-877-SIG-2009 (toll-free), 202-622-4559 (fax), or www.sigtarp.gov. Mail can be sent to Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L St. NW, Washington, DC 20220.

*page 1 of 1*

Exhibit B.

---

[1] The Coordeses submitted relevant information by fax on at least six occasions between August 24 and December 19, 2011, in addition to multiple telephone calls to Wells Fargo.

SECOND AMENDED CLASS ACTION COMPLAINT- 6

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

23.    On August 12, 2011, Wells Fargo assigned a home preservation specialist named Tanisha McNeely to the Coordeses' account. Ms. McNeely made numerous assurances to the Coordeses that she and Wells Fargo wanted to help them through the modification process. Among other such assurances, Ms. McNeely wrote on August 12, 2011, "You can count on me to keep you well-informed about your loan, the process, and next steps. I'm here to help you in any way I can," and "Please understand that we want to help you."

24.    Despite the assignment of a specialist to their case and contrary to their assurances, Wells Fargo and Ms. McNeely were largely unresponsive to the Coordeses' inquiries and efforts to obtain a modification.

25.    Wells Fargo repeatedly asked for the resubmission of the same documentation, such as bank statements and paystubs, over and over. During the summer of 2011, the Coordeses provided earning statements that showed Mr. Coordes's annual salary grew from $76,644 to $79,199. The Coordeses also provided detailed debt statements, bank statements, and employment records for both Monty and Michelle Coordes. Wells Fargo asked for the same documents multiple times, often claiming they had not received something the Coordeses had already provided. The Coordeses nevertheless continued to submit whatever Wells Fargo requested in their effort to save their home.

26.    On December 13, 2011, the Coordeses expressed their dissatisfaction with the lack of communication from their home preservation specialist and again communicated their ability to make mortgage payments.

27.    On December 23, 2011, even though Ms. McNeely was on vacation for much of December, Wells Fargo denied the Coordeses' request for a mortgage modification. Wells Fargo's own excerpted records on the Coordeses' home, which Plaintiffs have not had any opportunity to verify, show that the Coordeses'

SECOND AMENDED CLASS ACTION
COMPLAINT- 7

1
2

mortgage modification, which Wells Fargo classified as "FHLMC MOD," was "Incorrectly Decisioned" on December 23, 2011.

3
4
5

28.    The Coordeses never received a formal letter or other notice that their modification application had been denied. Instead, they learned of the impending loss of their home through the posting of a notice of foreclosure on their front door.

6
7
8

29.    Just over one month later, on January 27, 2012, the Coordes' family home, pictured below, was sold at auction, and the Coordeses (and their two dogs) were forced to find rental housing:

9
10
11
12
13
14
15
16
17
18
19
20



21
22
23

30.    It would be over six long years before Wells Fargo admitted to the Coordeses that they should have been approved for a modification, and that the resulting foreclosure of their beloved home was in error.

24
25
26

31.    Among other damage experienced by the Coordeses as a result of the foreclosure, Monty Coordes nearly lost his government clearance, a requirement

SECOND AMENDED CLASS ACTION
COMPLAINT- 8

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

for his job with the Federal Aviation Administration.

32.    The foreclosure also badly damaged the Coordeses' credit. Wells Fargo reported the foreclosure to the credit reporting agencies.

33.    As set forth below, Plaintiffs are informed and believe that Wells Fargo knew or should have known that the foreclosure was in error in or around 2013, but never made timely corrective disclosures regarding the foreclosure to the credit reporting agencies. Plaintiffs are informed and believe that Wells Fargo never made any attempt to correct the reporting of the erroneous foreclosure with the credit reporting agencies or otherwise sought to make disclosures that would make the reported foreclosure not misleading in light of the totality of the circumstances.

34.    The foreclosure eventually was dropped from the Coordeses' credit report due to the passage of time – seven years from the foreclosure. Although the foreclosure does not now appear on the Coordeses' reports, the Coordeses' credit was severely damaged during the period the foreclosure appeared; such damages included increased costs of borrowing and other damages stemming from impaired credit.

35.    Over the following years, the Coordeses worked diligently to rebuild their damaged credit and recover from the loss of their home. The Coordeses were not aware, due to Wells Fargo's concealment, of the untrue and misleading nature of Wells Fargo's report of foreclosure and could not, while the foreclosure appeared on their credit, file a dispute with the credit reporting agencies.

SECOND AMENDED CLASS ACTION
COMPLAINT- 9

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### 2. After Years of Concealment, Wells Fargo Finally Admits to the Coordeses that it Wrongly Denied Their Mortgage Modification and Wrongfully Foreclosed Upon Their Home

36.    In September 2018, the Coordeses began to receive phone calls from Wells Fargo representatives. In these calls, Wells Fargo acknowledged that it had made an error that resulted in the improper rejection of the Coordeses' modification application.  Wells Fargo attributed its error to a software issue.

37.    Shortly after Wells Fargo made telephone contact with the Coordeses, Wells Fargo confirmed its grievous error in writing, in a notice dated September 11, 2018.  In that notice, attached as Exhibit C, Wells Fargo admitted that it had made a mistake in calculating the Coordeses' eligibility for a mortgage modification.  That letter stated:

> We have some difficult news to share. When you were considered for a loan modification, you weren't approved, and now we realize that you should have been. We based our decision on a faulty calculation, and we're sorry. If it had been correct, you would have been approved for a trial modification.
>
> We want to make things right.
>
> We realize that our decision impacted you at a time you were facing a hardship. We've carefully considered what we can do for you. You'll find a payment enclosed to help make up for your financial loss. We're also reaching out to the consumer reporting agencies to ask them to remove any negative reporting.
>
> If you don't feel that we've made things right, you can consider mediation. A mediator is someone outside of Wells Fargo who will help us work together to resolve the issue. There'll be no cost to you. Please see the enclosed information. If you request mediation, you can still cash the enclosed check.

38.    Attached to Wells Fargo's September 11, 2018 letter was a check for $15,000. The Coordeses believe that the $15,000 check was far from adequate compensation for the loss of their home and the other injuries sustained due to Wells Fargo's misconduct.

39.    In November 2018, the Coordeses undertook mediation with Wells Fargo in an effort to receive appropriate compensation.  Through that mediation, Wells Fargo provided a modest payment of $25,000.  Wells Fargo, however, was

SECOND AMENDED CLASS ACTION
COMPLAINT- 10

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

unwilling to fairly compensate the Coordeses for the full extent of the harm that it had caused them and concealed for many years.

40.    In short, it took *six and half years* for Wells Fargo to finally admit that a "calculation error" in the software it used to evaluate mortgage loan modification eligibility resulted in the loss of the Coordeses' home. Upon information and belief, however, Wells Fargo knew or should have known what had actually happened ***years earlier***.

## B.    Wells Fargo's Deficient Mortgage Servicing and Foreclosure Practices Result in the Wrongful Foreclosures of Hundreds of Homes

41.    Unfortunately, the Coordeses are not alone in their experience. Wells Fargo's actions affected hundreds of homeowners.  And Wells Fargo – one of the largest mortgage servicers in the United States – has a long history of deficient mortgage practices, constituting a pattern and practice of unfair and unlawful conduct, that is at best reckless and at worst intentional and willful.

### 1.    Wells Fargo's Lengthy History of Deficient Mortgage Practices and Broken Promises

42.    Wells Fargo's wrongful conduct in this case is not an isolated incident but part of a larger pattern of wrongful and illegal mortgage and foreclosure practices. While Plaintiffs do not seek to enforce agreements that Wells Fargo has reached with the government, they provide the following context as the backdrop for the specific mortgage modification practices at issue in their case.

43.    In 2010, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of Comptroller of the Currency ("OCC"), and the Office of Thrift Supervision conducted an investigation of residential mortgage loan servicing and foreclosure related practices at the Bank. Exhibit D, *In the Matter of Wells Fargo & Co.*, Board of Governors of the Federal

SECOND AMENDED CLASS ACTION
COMPLAINT- 11

Reserve System, Docket No. 11-025-B-HC, April 13, 2011 (hereinafter "2011 Federal Reserve Consent Order") at 2.

44.    As a result of the 2010 Investigation, Defendant Wells Fargo Bank signed a Consent Order with the OCC. Exhibit E, *In the Matter of Wells Fargo Bank, N.A.*, Department of the Treasury, Comptroller of the Currency, Docket No. AA-EC-11-19, April 13, 2011 (hereinafter "2011 OCC Consent Order").  Also as a result of that investigation, the Bank's parent, Wells Fargo & Co., entered into a separate Consent Order with the Board of Governors of the Federal Reserve System. Exhibit D, 2011 Federal Reserve Consent Order. In these 2011 consent orders, Defendant Wells Fargo and its parent, Wells Fargo & Co., agreed to respective comprehensive plans of action.

45.    In the 2011 OCC Consent Order with the Bank, the Comptroller stated that the Bank engaged in "unsafe or unsound practices in residential mortgage servicing and in the Bank's initiation and handling of foreclosure proceedings." The Comptroller found multiple serious deficiencies in the Bank's residential mortgage servicing and foreclosure practices. Among other things, the Comptroller found that the Bank:

> (d) failed to devote sufficient financial, staffing and managerial resources to ensure proper administration of its foreclosure processes;

> (e) failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliant risk management, internal audit, third party management, and training; and

> (f) failed to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services.

Exhibit E, 2011 OCC Consent Order at 3.

SECOND AMENDED CLASS ACTION COMPLAINT- 12

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

46.      In the 2011 OCC Consent Order, Defendant Wells Fargo agreed, *inter alia*:

> [Article II] To the creation of a Compliance Committee "responsible for the monitoring and coordinating the Bank's compliance with the provisions of this Order."
>
> [Article III] To create and implement an "Action Plan" to ensure compliance with the Order, including the devotion of sufficient financial resources, managerial resources, and staffing for foreclosure activities and to ensure compliance with all applicable federal laws, regulations, orders and requirements, including the requirements of the Home Affordable Modification Program ("HAMP").
>
> [Article IV] To submit and implement a Compliance Program to ensure that loss mitigation, foreclosure activities, and mortgage modifications complied with the Order, OCC guidance, and were conducted in a safe and sound manner. Among the requirements of the Compliance Program were appropriate written policies and procedures for loan servicing and foreclosure operations; the implementation of "processes to ensure that all fees, expenses, and other charges imposed on the borrower are assessed in accordance with the underlying mortgage note" and applicable legal requirements; and "ongoing testing for compliance" with applicable legal requirements.

*Id.* at 3-10.

47.      In the 2011 Consent Order pertaining to the Bank's parent, Wells Fargo & Co., the company agreed to measures to ensure "that the consolidated organization operated in a safe and sound manner and in compliance with the terms of mortgage loan documentation and related agreements with borrowers," as well as all applicable laws, rules, regulations, and agreements including those with the GSEs, FHA, and HAMP. The Federal Reserve noted concerns that Wells Fargo & Co. – which "indirectly engages in the business of servicing residential mortgage loans for the Bank" and as parent of a Bank that "initiates and handles foreclosure

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

proceedings and loss mitigation activities… including… modifications" – had not "adequately assess[ed] potential risks associated with these activities." Exhibit D, 2011 Federal Reserve Consent Order at 1-2.

48.     In that Consent Order, the Federal Reserve ordered Wells Fargo & Co.'s Board of Directors to take steps to ensure that the Bank complied with its obligations under the Consent Orders, including by strengthening the Board's oversight of compliance with legal and regulatory requirements (including the HAMP program), to ensure adequate staffing and resources were dedicated to compliance and audit functions, and to improve information and reports that were to be regularly reviewed by Wells Fargo & Co.'s Board of Directors. These steps included creation of a plan to strengthen Board oversight of enterprise-wide risk management, internal audit, and compliance programs concerning residential mortgage loan servicing, loss mitigation, and foreclosure activities and creation of a written plans to enhance enterprise-wide compliance and audit with respect to those activities. *Id.* at 4-8.

49.     In short, Wells Fargo & Co. agreed to strengthen oversight of risk management, enhance compliance, and improve its internal audit program, all specifically related to the areas of residential mortgage loan servicing, loss mitigation, and foreclosure activities and operations of the Bank.

50.     Wells Fargo & Co. would subsequently report to the Federal Reserve that the Bank's Compliance Committee was meeting as required, that the Audit & Examination Committee of the Board of Directors would assume ongoing responsibility for oversight and compliance based on improved reporting, and that its Chief Operational Risk Officer was providing both the Compliance Committee and the Audit and Examination Committee with the necessary information and testing results for them to effectively oversee the Bank's mortgage modification

SECOND AMENDED CLASS ACTION
COMPLAINT- 14

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and foreclosure practices and to ensure compliance with HAMP and other government requirements.

51.    Together, Wells Fargo's executives and its board members were supposed to make sure that the Bank conducted the necessary testing and oversight to ensure that the Bank engaged in sound servicing, modification, and foreclosure practices, and to ensure compliance with applicable laws and regulations, including those pertaining to mortgage modifications. Nevertheless, they repeatedly failed to fulfill these obligations over the course of several years.

52.    In 2013, Defendant Wells Fargo agreed to amendment of the 2011 OCC Consent Order.  Exhibit F, *In the Matter of Wells Fargo Bank, N.A.*, Department of the Treasury, Comptroller of the Currency, Order No. 2013-132, Amending Order No. 2011-051, Docket No. AA-EC-11-19, February 28, 2013.

53.    In 2015, Defendant Wells Fargo agreed to further amendment of the 2011 Consent Order. In that 2015 Consent Order, the OCC stated that the Bank "has failed to comply with Articles II, III, IV, VIII, and IX of the Consent Order" and that "the Bank is continuing in noncompliance with and in violation of the Consent Order, and continues to engage in unsafe and unsound practices." Exhibit G, *In the Matter of Wells Fargo Bank, N.A.*, Department of the Treasury, Comptroller of the Currency, Order No. 2015-067, Amending Orders No. 2013-132 and 2011-051, Docket No. AA-EC-11-19, June 16, 2015 (hereinafter "2015 OCC Consent Order") at 1.

54.    In that 2015 Consent Order, the Comptroller required, among other things, continued maintenance of a Compliance Committee and submission of a Revised Action Plan.  The Comptroller found that Wells Fargo had failed to comply with the provision of the 2011 Consent Order requiring "processes to ensure that all fees, expenses, and other charges imposed on the borrower are

SECOND AMENDED CLASS ACTION
COMPLAINT- 15

assessed in accordance with the terms of the underlying mortgage note" or applicable law, and failed to implement "ongoing testing for compliance" with applicable legal requirements. Exhibit G, 2015 OCC Consent Order, at 7.

55.    In the 2015 OCC Consent Order, the Comptroller also found that the Bank had not maintained ongoing testing for compliance with government requirements (including HAMP), had not ensured that the Bank's audit and compliance programs had the requisite authority and status within Wells Fargo so that deficiencies in the Bank's mortgage modification and foreclosure practices would be identified and promptly remedied, and had not ensured that the Bank was making reasonable and good faith efforts to modify delinquent mortgages and prevent foreclosures of its customers' homes.

56.    Wells Fargo failed to live up to its promises yet again. In February 2018, the Federal Reserve issued a Cease and Desist Order that limited Wells Fargo's growth beyond the total consolidated assets reported as of December 31, 2017. *See* Exhibit H, *In the Matter of Wells Fargo & Co*., Board of Governors of the Federal Reserve System, Docket No. 18-007-B-HC, February 2, 2018 (hereinafter "2018 Federal Reserve Consent Order").  The Federal Reserve Board found that Wells Fargo, as an organization, "pursued a business strategy that emphasized sales and growth without ensuring that senior management had established and maintained an adequate risk management framework commensurate with the size and complexity of the Firm, which resulted in weak compliance practices." *Id.* at 2.

57.    Shortly thereafter, in April 2018, the OCC again made public findings against Well Fargo in another Consent Order that stated: "Since at least 2011, the Bank has failed to implement and maintain a compliance risk management program commensurate with the Bank's size, complexity and risk profile." *See*

SECOND AMENDED CLASS ACTION
COMPLAINT- 16

Exhibit I, *In the Matter of Wells Fargo Bank, N.A.*, Department of the Treasury, Comptroller of the Currency, Docket No. AA-EC-2018-15, April 20, 2018 (hereinafter "2018 OCC Consent Order").

58.    In the 2018 OCC Consent Order, the Comptroller reported that the Bank had engaged in "reckless unsafe or unsound practices and violations of law." *Id*. at 2.  In the Order, the OCC detailed numerous failures and instances of misconduct by the Bank, including those related to mortgage servicing. *Id*.  As a result, Well Fargo was fined $500,000,000 (paid to the government, not private plaintiffs).

59.    As noted above, because of the Bank's pervasive pattern of consumer abuses and other lapses, the Federal Reserve barred Wells Fargo from expanding its total assets beyond the level at the end of 2017. Until Wells Fargo has reformed, and the implementation of those reforms passes review by an independent third-party auditor, the Federal Reserve will not lift the asset cap imposed on the company. Wells Fargo & Co. has announced that it will continue to operate under the Federal Reserve asset cap through the end of 2019, rather than just the first half of the year as previously reported, as it takes longer than anticipated to correct the problems in its consumer business.

**2.    Wells Fargo's Pattern of Reckless and Unlawful Mortgage Servicing Allows a Software Error to Deny Mortgage Modifications that Should Be Approved.**

60.    During the relevant time frame, Wells Fargo used certain software to evaluate applications for mortgage loan modification. According to Wells Fargo, the error at issue occurred in the process of the software called "the Waterfall," which was designed to bring homeowners current on their loans with a modified monthly payment. According to Wells Fargo's documents, "[e]ach waterfall seeks

SECOND AMENDED CLASS ACTION COMPLAINT- 17

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to bring the borrower current with their payments and to modify the loan to make the monthly payment affordable." Likewise, "these modification programs all attempt to prevent foreclosure by getting the borrower current on delinquent payments and restructuring the mortgage loan terms in order to make the payments affordable to the borrower." Wells Fargo Bank, "Home Preservation Application Overview," Nov. 1, 2011 (*submitted as* Exh. 12 to Declaration of Michael Schrag in Support of Plaintiffs' Motion for Class Certification, *Hernandez v. Wells Fargo Bank, N.A.*, No. 3:18-cv-07354-WHA (N.D. Cal. Aug. 29, 2019), ECF No. 138).

61.    Part of Wells Fargo's analysis and evaluation of a mortgage modification application considered attorneys' fees incurred by the Bank during processing. Wells Fargo did not perform this analysis correctly, however. Plaintiffs are informed and believe that the software tools used by Wells Fargo erred when, rather than *comparing* actual attorneys' fees with the matrix established by the federal government of allowable attorneys' fees by state, the Home Preservation Application ("HPA") *added* the matrix fees to the actual fees. This caused numerous rejections of otherwise valid mortgage modification applications.

62.    Upon information and belief, at various times, this software was integrated with or updated with products from Lender Processing Services, Inc. ("LPS") and/or Black Knight or used with the involvement of LPS and/or Black Knight as vendor. From at least 2008, Wells Fargo had a contract with LPS for mortgage servicing software. LPS, formerly the lender services division of Fidelity National Information Services, developed and maintained a loan-servicing platform. Wells Fargo serviced 7.9 million loans using LPS software.

63.    LPS itself is no stranger to scandal. In 2013, LPS settled with 46 states for $127 million for its involvement in robo-signing foreclosure documents

SECOND AMENDED CLASS ACTION
COMPLAINT- 18

in 2010. A former executive was also criminally charged for her role in the fraud and was sentenced to five years in federal prison in 2013.

64.     Despite these well-publicized scandals relating to the LPS products used by Wells Fargo, the Bank continued to maintain a business relationship with LPS and its successor, Black Knight.  Rather, upon information and belief, Wells Fargo expanded its relationship with LPS/Black Knight, a relationship that continues to this day.

65.     Wells Fargo failed to adequately test, monitor, and modify its modification and foreclosure processes, including software, leading to foreclosures. The failure of Wells Fargo to use accurate tools to process mortgage modification applications in many cases led directly to foreclosures, including for the Coordeses and hundreds of others.

66.     Wells Fargo failed to use appropriate mortgage servicing and modification tools, and failed to adequately test and monitor those tools, notwithstanding warnings by the OCC in 2011 of its deficient practices and processes.  Its parent, Wells Fargo & Co., likewise failed to adequately monitor the conduct of its primary operating subsidiary, notwithstanding its 2011 Consent Order with the Federal Reserve.

67.     Wells Fargo recklessly failed to prevent these errors, moreover, notwithstanding its agreement with the OCC to implement an "Action Plan" and to devote sufficient resources to ensure compliance with applicable federal laws and regulations, including HAMP.

68.     Wells Fargo also allowed these errors to occur in spite of its agreement, pursuant to the 2011 Consent and Cease and Desist Order with the OCC, to implement a "Compliance Program" to ensure that loss mitigation, foreclosure activities, and mortgage modifications complied with the Order; its

SECOND AMENDED CLASS ACTION
COMPLAINT- 19

agreement to the implementation of "processes to ensure that all fees, expenses, and other charges imposed on the borrower are assessed in accordance with the underlying mortgage note" and applicable legal requirements; and its promise to implement "ongoing testing for compliance" with applicable legal requirements.

### 3. Wells Fargo Discovers the Error in its Modification Analysis, but Conceals the Problem

69.     Not only did Wells Fargo allow the use of defective software in the analysis of mortgage modifications, but, upon information and belief, it hid its erroneous denials of modifications despite possessing knowledge that would enable it to take corrective action for many years. During this time, and despite knowledge of its misconduct, Wells Fargo failed to take corrective action, including any corrective action with respect to injured parties' credit.

70.     In August 2013, an error relating to attorneys' fees calculation in Wells Fargo's modification processing was discovered by employees and escalated to senior management.

71.     As a result, in late 2013, Wells Fargo reviewed 7,000 loans to determine if the denials of mortgage modifications were wrongfully denied, and it discovered that at least 50 of those were, indicating the tip of the iceberg of a much larger problem.

72.     Upon information and belief, although its employees had made the Bank aware of the major problem, and a problem was confirmed to exist, Wells Fargo neither notified borrowers or credit agencies, nor took adequate steps to correct the problem.

73.     In 2015, Wells Fargo began to take steps to remove the faulty attorney fee matrix from its processes, involving a vendor in this process to implement a corrected application. As explained in Wells Fargo's document attached hereto as

SECOND AMENDED CLASS ACTION
COMPLAINT- 20

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Exhibit J, the Bank created an "effort" it named "Corporate Advance and State Attorney Fee Matrix Research." According to the Bank, the purpose of the effort was "to remove the State Attorney Fee Matrix Table housed in the HPA tool . . . and to implement the LPS Desktop application (AKA Black Knight) . . . ." The effort was intended to "[i]mprove the accuracy of the decision with regard to fees, which will in turn improve the customer experience."

74.    In short, despite being aware of the error in 2013, and despite apparently taking some corrective action in 2015, Wells Fargo concealed the error from affected borrowers until 2018. Equally astonishing is the fact that despite being aware of the error in 2013, and taking some corrective action in 2015, Wells Fargo apparently allowed incorrect modification decisioning to continue until April 2018, shortly before its belated public disclosure in August 2018.

75.    The full facts of Wells Fargo's concealment of its erroneous decisioning in the modification processes, and its attempts to rectify it, will be the subject of discovery in this litigation. The following, however, is known now, to the best of Plaintiffs' knowledge and on information and belief:

A.    Although it was wrongly denying its borrowers' modifications between at least March 2010 and April 2018, the limited Wells Fargo internal documents available to Plaintiffs show it first discovered an error in August 2013.

B.    There was at least a two-year gap between Wells Fargo becoming aware of the software error and its first meaningful attempt to fix the error in October 2015.

C.    Despite indications that Wells Fargo implemented corrective action in 2015, Wells Fargo would later admit that incorrect decisions were continuing up through April 2018.

SECOND AMENDED CLASS ACTION
COMPLAINT- 21

D.      Wells Fargo did not admit the error publicly or take any corrective action with respect to affected borrowers at any point prior to August 2018.

**C.      Wells Fargo Finally Admits its Error After a Five-Year Concealment**

76.     On August 3, 2018, on the heels of significant findings of misconduct and a hefty civil penalty, Wells Fargo finally revealed in its second quarter 2018 SEC 10-Q filing that an internal review of its mortgage loan modification underwriting software determined a "calculation error" involving some accounts in the foreclosure process between April 13, 2010 and October 20, 2015.

77.     Wells Fargo announced that it had identified at least 625 customers who were incorrectly denied a mortgage modification for which they would otherwise have qualified because of this mistake. Wells Fargo estimated that approximately 400 of those 625 cases resulted in foreclosure. Wells Fargo also wrote that it had "accrued $8 million to remediate customers," which amounts to an average of only $12,800 per customer.

78.     On November 6, 2018, in its third quarter 2018 SEC 10-Q filing, Wells Fargo revealed the widening scope of the scandal.

79.     In that filing, Wells Fargo disclosed that it had expanded the range of affected loans to include dates between March 15, 2010, and April 30, 2018. Wells Fargo stated that April 30, 2018, was the date that "new controls were implemented," suggesting that it either did not take the steps contemplated and recommended in October 2015 or that those steps were insufficient. The expanded date search resulted in an increase in the number of affected homeowners from 625 to approximately 870, of which approximately 545 experienced foreclosures.

80.     Wells Fargo's long-overdue review of its automated mortgage modification tools is apparently still not complete.  In its third quarter 2018 10-Q,

SECOND AMENDED CLASS ACTION
COMPLAINT- 22

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Wells Fargo wrote that:

> The Company has contacted a substantial majority of the approximately 870 affected customers to provide remediation and the option also to pursue no-cost mediation with an independent mediator. Attempts to contact the remaining affected customers are ongoing. Also, the Company's review of these matters is ongoing, including a review of its mortgage loan modification tools.

81.    In other words, Wells Fargo hasn't notified everyone the Bank has identified who has been affected by its mortgage decisioning error, and more affected borrowers may still be discovered.

82.    In its 10-Q for the first quarter of 2019, filed May 3, 2019, Wells Fargo disclosed:

> A subsequent expanded review identified related errors regarding the maximum allowable foreclosure attorneys' fees permitted for certain accounts that were in the foreclosure process between March 15, 2010, and April 30, 2018, when new controls were implemented.
>
> …
>
> The Company's review of its mortgage loan modification practices is ongoing.

83.    And again, in its 10-Q for the second quarter of 2019, filed August 2, 2019, Wells Fargo stated that "[t]he Company's review of its mortgage loan modification practices is ongoing."

84.    Plaintiffs understand that the number of affected homeowners is now estimated by Wells Fargo to exceed 900, *see* ECF No. 42 at 7, and thus the number of affected homeowners continues to grow by Wells Fargo's own estimation.[2]

---

[2]These incorrect denials were not limited to a single type of loan modification. Wells Fargo later publicly provided documents that list many affected borrowers that included loan modification categories of numerous types.

SECOND AMENDED CLASS ACTION
COMPLAINT- 23

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

85.    As Wells Fargo has stated that it continues to investigate, there may be even more affected homeowners than already known at the time of this filing. Of course, Plaintiffs have had no opportunity to evaluate the accuracy of Wells Fargo's process to identify affected homeowners.  What is known and clear is that the number of affected former homeowners is growing and on an upward trajectory.

86.    In late 2018, Wells Fargo began to distribute form letters to the affected borrowers admitting it had made a grave mistake.  Upon information and belief, those letters were substantially identical to the letter received by Monty and Michelle Coordes, excerpted above.

87.    Wells Fargo has not announced if additional funds have been allocated to address the expanding class of affected consumers. It also attempted to mediate with several borrowers, including the Coordeses. The resolution reached in that mediation was unsatisfactory.

88.    The Coordeses and the Class members, affected by the error and not given their rightfully-deserved modification, faced a variety of harms. These consequences include increased borrowing costs, loss of equity and the appreciation of their home, legal fees, devastating impacts to their consumer credit, and incidental costs related to the sudden need to move (a hardship made even more difficult by the burden of finding new housing with impaired credit).

---

Wells Fargo labeled these numerous options as "Product Type[s] Incorrectly Decisioned" along with the dates of those incorrect decisions and the "Category of Remediation." For the Coordeses, the Product Type was "FHLMC MOD" and the "Incorrect Decision Date" was December 23, 2011. Their Category of Remediation was listed as "2.FCL."

SECOND AMENDED CLASS ACTION
COMPLAINT- 24

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

89.     Wells Fargo has not fully compensated the Coordeses or those similarly situated for all the injuries Wells Fargo has caused them, injuries that this lawsuit can redress.

**D.     Wells Fargo's Long History of Chronic and Intentional Lack of Central Oversight**

90.     The failure of Wells Fargo to implement adequate auditing procedures, oversight, and testing of its mortgage servicing, modification, and foreclosure processes is not an isolated incident of compliance failure.

91.     Rather, as scandal after scandal comes to light, it has become clear that Wells Fargo's executives have abandoned their responsibility to perform oversight of the organization.

92.     Of these failures of leadership, the most notorious example may be the fraudulent account scandal uncovered in 2016.  It was revealed that Wells Fargo employees were encouraged and pressured to sign up customers for accounts without their knowledge.  Through the course of the scandal, the number of affected customers and fraudulent accounts expanded, with multiple revelations that far more fraudulent accounts had been opened than previously revealed.

93.     The two executives most associated with the fraudulent account scandal – John G. Stumpf and Carrie L. Tolstedt – were signatories to one of the 2011 Consent Orders discussed above and among those responsible for Wells Fargo's failure to comply with those orders by implementing adequate audit and compliance procedures.

94.     There are many more examples of Wells Fargo's Board and executive leadership abdicating their oversight responsibilities.  Wells Fargo's Board and executive leadership have consistently ignored unlawful, unsafe, and unsound

SECOND AMENDED CLASS ACTION
COMPLAINT- 25

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

practices throughout the organization's lending division, leading to a series of government fines and citations.

95.     To give a few examples:

A.      In July 2011, the Federal Reserve Board issued a consent cease and desist order and assessed an $85 million civil penalty against Wells Fargo & Co. stemming from allegations that Wells Fargo employees steered potential prime borrowers into more costly subprime loans and separately falsified income information in mortgage applications.

B.      In July 2012, Wells Fargo agreed to pay $175 million to settle charges that its mortgage lending practices discriminated against African-Americans and Hispanic borrowers.

C.      In January 2013, Wells Fargo was one of ten major lenders that agreed to pay a total of $8.5 billion to resolve claims stemming from foreclosure abuses.

D.      In September 2013, Wells Fargo agreed to pay $869 million to resolve claims that it had misrepresented the quality of mortgage loans sold to Freddie Mac.

E.      In April 2016, Wells Fargo agreed to pay $1.2 billion and accepted responsibility for falsely certifying that mortgage loans were eligible for FHA insurance.

F.      In August 2016, Wells Fargo agreed to pay a $3.6 million penalty to resolve claims that it engaged in illegal student loan servicing practices.

G.      In April 2018, Wells Fargo was fined $1 billion for improperly force-placing insurance on auto-loans consumers, often leading to wrongful

SECOND AMENDED CLASS ACTION
COMPLAINT- 26

vehicle repossessions, and charging its mortgage-loan customer excessive rate-lock fees.

H.    In December 2018, Wells Fargo agreed to pay $575 million to resolve allegations that it engaged in improper practices relating to the sale of renters' and life insurance and for overcharging for GAP auto insurance.

96.    Just as it did with the 2011 Consent Cease and Desist Order, Wells Fargo often promised to reform its oversight, audit, and compliance functions as part of settlements with the government.  But Wells Fargo's Board and executives repeatedly failed to live up to those obligations and continued to fail in their oversight responsibilities. As the OCC stated in 2018, "Since at least 2011, the Bank has failed to implement and maintain a compliance risk management program commensurate with the Bank's size, complexity, and risk profile," which has caused the Bank to "engage in reckless, unsafe, or unsound practices and violations of law."

97.    As noted above, the Bank and its parent continue to operate under a cap imposed by the Federal Reserve until their pattern and practice of consumer abuses are rectified, a restriction expected to last until, at least, the end of this year.

## V.    CLASS ACTION ALLEGATIONS

98.    This matter is brought by the Coordeses on behalf of themselves and those similarly situated, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). The Class that the Coordeses seek to represent is defined at this time as:

> All persons who sought a mortgage modification from Wells Fargo March 15, 2010 to April 30, 2018, and were denied due to one or more software decisioning errors. The Class includes, but is not limited to, persons to whom Wells Fargo sent the notice referred to in paragraphs 37 & 87, *supra*.

SECOND AMENDED CLASS ACTION COMPLAINT- 27

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

99.    Excluded from the Class are Wells Fargo's officers, directors, and employees; the judicial officers and associated court staff assigned to this case; and the immediate family members of such officers and staff. The Coordeses reserve the right to amend the Class definition based on information obtained in discovery.

100.    The Washington Class consists of Class members who, between March 15, 2010, and April 30, 2018, lived in Washington or owned property located in Washington that was the subject of a denial of a mortgage modification by Wells Fargo due to one or more software decisioning errors.

101.    **Numerosity**: The members of the Class are so numerous that joinder of all members would be impractical. The proposed Class contains over 900 members by Wells Fargo's own admission. Wells Fargo is the nation's second largest home lender. The precise number of class members can be ascertained through discovery, which will include Wells Fargo's underwriting and other records.

102.    **Commonality and Predominance**: Common questions of law and fact predominate over any questions affecting only individual members of the Class.

103.    For the Coordeses and the Class, the common legal and factual questions include, but are not limited to the following:

A.    Whether Wells Fargo has breached the contractual duties under the mortgage contracts with the Class members by preventing the Class members from curing their defaults;

B.    Whether Wells Fargo has breached the implied covenant of good faith and fair dealing by frustrating the ability of the Class members to obtain the full benefit of the mortgage contracts, or, in the alternative by failing to act in good faith in the mortgage modification review process;

SECOND AMENDED CLASS ACTION
COMPLAINT- 28

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

C.      Whether Wells Fargo has defamed the Class members by reporting incorrect information to credit reporting agencies and recklessly concealing the error for years after it was discovered;

D.      Whether Wells Fargo timely notified Plaintiffs and Class members of its modification error and the consequences of the same;

E.      Whether Wells Fargo has engaged in unconscionable acts or practices and unfair or deceptive acts or practices with the incorrect denial of mortgage modification applications for borrowers who rightfully qualified;

F.      Whether, because of Wells Fargo's conduct, the Coordeses and the Class have suffered damages; and if so, the appropriate amount thereof;

G.      Whether, because of Wells Fargo's misconduct, the Coordeses and the Class are entitled to equitable and declaratory relief, and if so, the nature of such relief; and

H.      Whether Wells Fargo's unlawful conduct described herein involved other persons or entities.

104.    Membership of the Class may be determined through Wells Fargo's records, including loss mitigation records like loan modification applications, which are stored on third party "Mortgage Service Platform" used by Wells Fargo. Wells Fargo has also announced it intends to contact all affected Class members, which will help identify the Class, in addition to discovery conducted in this Action.

105.    **Typicality**: The Coordeses' claims are typical of the claims of the members of the Class. The Coordeses and all the members of the Class have been injured by the same wrongful practices of Wells Fargo, by Wells Fargo's own admission. The Coordeses' claims arise from the same practices and course of

SECOND AMENDED CLASS ACTION
COMPLAINT- 29

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

106.   **Adequacy**: The Coordeses are representatives who will fully and adequately assert and protect the interests of the Class and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither the Coordeses nor their attorneys have any interests contrary to or in conflict with the Class.

107.   **Superiority**: A class action is superior to all other available methods of the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely to be in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

108.   Further, individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Wells Fargo has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

SECOND AMENDED CLASS ACTION COMPLAINT- 30

109.    Wells Fargo has, or has access to, address and/or other contact information for the members of the Class, which may be used to provide notice of the pendency of this action.

## VI.    STATUTES OF LIMITATIONS

### A.    Discovery Rule

110.    The discovery rule delays the date on which a statute of limitations starts to run. Despite their diligence, the Coordeses and Class members did not discover and could not have discovered the facts that form the basis for their causes of actions. Specifically, the Coordeses and the Class members had no ability to know that their mortgage modification requests were rejected due to an internal fault in Wells Fargo's mortgage loan modification process.

111.    Wells Fargo concealed its processing error until revealing it in a filing with the SEC on August 3, 2018. Further, the Coordeses did not learn of the error generally, or specifically that it applied to them, until Wells Fargo contacted them in September 2018.

112.    There is no reasonable expectation, including with the use of due diligence, that the Coordeses or the Class members should or could have suspected their mortgage modification denials and subsequent foreclosures were the result of internal processing errors. The Coordeses and the Class members had the reasonable expectation that Wells Fargo's internal processes would fairly and accurately assess the merit of their modification applications.

113.    Any statutes of limitations otherwise applicable to any claim asserted have been tolled under the discovery rule by the inability of the Plaintiffs to have a reasonable opportunity to discover the unlawful injury giving rise to this complaint until they were contacted by Wells Fargo on or about September 2018.

SECOND AMENDED CLASS ACTION COMPLAINT- 31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**B.    Equitable Tolling**

114.    Equitable tolling pauses the statute of limitations after it has already begun. The Coordeses were aware of their injury – the foreclosure of their beloved home was clear evidence – however, as described above, they lacked the ability to determine that their injuries were, in fact, the result of wrongdoing by Wells Fargo. It was not until Wells Fargo contacted them – over six years after their loss – that they learned their injury was the result of Wells Fargo's misconduct. No reasonable plaintiff would have known of their valid claim during the statute of limitations.

115.    Because there was excusable delay by the Coordeses and the Class members for not bringing their claims until they were contacted by Wells Fargo on or about September 2018, any statutes of limitations have been tolled by the doctrine of equitable tolling until the discovery of the conduct giving rise to this complaint.

**C.    Estoppel**

116.    Wells Fargo was under a continuous duty to notify the Coordeses and the Class members of the error in its modification software upon discovery in 2013.  Yet, even though the problems occurred between March 2010, and April 2018, Wells Fargo concealed the problem until August 3, 2018, when it disclosed the error in its 10-Q filing. Even with the revelation of the processing error, the Coordeses and the Class members could not determine that they were victims until they were contacted by Wells Fargo, which occurred in or around September 2018.

117.    Wells Fargo did not re-evaluate the denied modifications or admit its error to the affected consumers, including the Coordeses, for a period of many years. Instead, Wells Fargo concealed its mistake, thus preventing the Coordeses and the Class members from pursuing relief earlier under the law. This lengthy

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  delay compounded harm to the Coordeses and the Class members. Because of
2  Wells Fargo's concealment of the wrongful denial of modification applications, the
3  Coordeses and Class members did not and could not know of the existence of their
4  claims.

5      118.   Based on the foregoing, Wells Fargo is estopped from relying on any
6  statutes of limitations in defense of this action.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Contract**
**Asserted on Behalf of Plaintiffs and the Nationwide Class**

9      119.   Plaintiffs incorporate by reference every prior and subsequent
10 allegation of this Complaint as if fully restated here.

11     120.   Plaintiffs bring this claim on behalf of themselves and the Nationwide
12 Class or, in the alternative, on behalf of themselves and the Washington Class.

13     121.   In Requesting Judicial Notice of Plaintiffs' Deed of Trust, a form
14 contract, and referring to it throughout its August 9, 2019 Motion to Dismiss
15 ("Motion"), Wells Fargo asserted that "the Parties [Wells Fargo and Plaintiffs] Had
16 an Express Contract."  ECF No. 26 at 4-7.

17     122.   On information and belief, Class members entered into form contracts
18 with Wells Fargo that are the same or substantially similar to Plaintiffs' Deed of
19 Trust, attached to this Complaint as Exhibit A ("Agreement" or the "Security
20 Instrument").

21     123.   Plaintiffs and Class members did not draft the terms of the
22 Agreement, but rather were provided the Deed of Trust as a form contract to be
23 signed.

24     124.   As Defendant states in its Motion to Dismiss, "Among other things,

SECOND AMENDED CLASS ACTION
COMPLAINT- 33

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the agreement between the parties (1) required Plaintiffs to make loan payments to Wells Fargo (RJN Ex. A, Deed of Trust ¶ 1); and (2) gave Wells Fargo the absolute right to foreclose in the event of an **uncured** default. (*id. ¶¶* 9, 22)." Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss and Motion to Strike Class Action Complaint, at 5, ECF No. 26, emphasis added.

125.    At the heart of the Agreement between Wells Fargo and its borrowers is the bedrock concept that, before the Bank can foreclose or take other adverse action against the borrower, it must provide notice to the borrower. That notice must explain the action required to cure a default. One of the actions that can cure a default is a mortgage modification. Wells Fargo breached its contractual obligations because it failed to notify Plaintiffs and class members that they could cure a default with a mortgage modification.

126.    The Agreement provides for a Borrower's Right to Reinstate After Acceleration, requiring the Bank to "give notice to Borrower prior to acceleration[.]" Agreement ¶ 22. That notice "shall specify," among other things "the default" and "the action **required to cure the default**[.]" Exhibit A. (emphasis added).  The Agreement continues, "[t]he notice shall further inform Borrower of the right to reinstate after acceleration[.]" Only if "the default is not cured," the Bank "may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale[.]" *Id.*

127.    Wells Fargo recognized that a modification could cure a default and that a loan modification could cure a payment deficiency.

128.    For example, Wells Fargo's Loan Administration Manager, Robert Ferguson, has testified that a mortgage modification could cure a default and bring a loan current. Specifically, Mr. Ferguson testified that a final loan modification will remove a mortgage from being in default on the mortgage servicing platform

SECOND AMENDED CLASS ACTION COMPLAINT- 34

and stated that "the default would be cured if the loan modification goes through the final settlement process, thus curing the default." Declaration of Michael Schrag in Support of Plaintiffs' Motion for Class Certification at Ex. 9 (Depo. of Robert Ferguson) at 49:8-17; 50:2-7, *Hernandez v. Wells Fargo Bank, N.A.*, No. 3:18-cv-07354-WHA (N.D. Cal. Aug. 29, 2019), ECF No. 138 (first made publicly available on Aug. 29, 2019).

129.    This testimony is consistent with other online material and correspondence Wells Fargo sent to Borrowers and in response to requests for mortgage assistance. For example, an explanatory video on Wells Fargo's website suggests modification is one way to cure default. The narrator says, "We want to work with you even if you've asked for help before, and it starts with a talk about all of the options that could help you avoid foreclosure," and then goes on to say "we'll likely discuss applying for a loan modification that changes the terms of your loan. And if you are approved" if the borrower wants to say in their home.

130.    Wells Fargo's correspondence with borrowers also repeatedly confirmed that a modification can cure a default. For example, Wells Fargo wrote to borrowers that:

      A.    "a program that may assist you in bringing your loan current … This program, known as a loan modification, would provide you with the opportunity for a fresh start by adjusting the current terms of your loan."

      B.    a loan modification is "an agreement that changes the terms of your existing mortgage. It brings your account up-to-date and may result in a lower monthly payment."

Order on Plaintiffs' Motion for Leave to Amend, p. 3, *Hernandez v. Wells Fargo Bank, N.A.*, No. 3:18-cv-07354-WHA (N.D. Cal. Aug. 19, 2019), ECF No. 136;

SECOND AMENDED CLASS ACTION COMPLAINT- 35

Plaintiffs' Second Amended Complaint, para. 190, 191, *Hernandez v. Wells Fargo Bank, N.A.,* No. 3:18-cv-07354-WHA (N.D. Cal. Aug. 19, 2019), ECF No. 137.

131.    The Bank breached its contractual Agreement with Plaintiffs and Class members by failing to give them adequate notice prior to accelerating their loan payments, initiating foreclosure, and foreclosing on Plaintiffs' and Class members' homes.

132.    Wells Fargo also breached its Agreement with Plaintiffs and the Class members by failing to notify them under the terms of the Agreement that they could cure their default and avoid acceleration and foreclosure through a mortgage modification.  Plaintiffs and the Class qualified for a mortgage modification but, in the Bank's own words "you weren't approved [for the loan modification], and now we realize that you should have been."  Exhibit C.

133.    As a result of the Bank's breach, Plaintiffs and the Class members were injured.  Their damages include, but are not limited to, the loss of their homes, including loss of equity, lost appreciation of the homes as an asset, and loss of time and money invested in their homes; payment of fees and penalties; loss of tax benefits, favorable interest rates, or other favorable loan terms; loss of time and money spent in an effort to avoid foreclosure; damage to their credit including increased borrowing costs; moving expenses and the loss of time required to locate new housing and relocate; and housing costs.

## SECOND CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### Asserted on Behalf of Plaintiffs and the Nationwide Class

134.    Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

135.    Plaintiffs bring this claim on behalf of themselves and the Nationwide

SECOND AMENDED CLASS ACTION
COMPLAINT- 36

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Class or, in the alternative, on behalf of themselves and the Washington Class.

136.    Plaintiffs, the Class members, and Wells Fargo were parties to a contract, the Agreement referenced in paragraphs 122-123.  The Agreement binding the Class members was substantially similar to the Plaintiffs' Deed of Trust attached as Exhibit A.

137.    Regardless of its terms, every contract contains an implied covenant of good faith and fair dealing. The implied covenant obligates the parties to cooperate so that each party may obtain the full benefit of performance of the contract. The duty of good faith and fair dealing means that parties may not interfere with or fail to cooperate in the other party's performance. Neither party may engage in conduct that impairs or prevents the other party from enjoying the benefits of the contract or engage in conduct that prevents the other party from performing under the contract.

138.    Wells Fargo impliedly covenanted as assignee under the Agreement and servicer that it would undertake its duties in good faith.

139.    No reasonable party would enter into a mortgage if the underlying property could be arbitrarily foreclosed. Accurate and diligent servicing is foundational to the agreement, as is freedom from arbitrary, reckless, or irrational conduct by a servicer.

140.    Even if the Coordeses' Agreement was slightly different from the agreements binding some Class members, which Plaintiffs intend to probe in discovery, the covenant of good faith and fair dealing is a common foundation inherent in all of the mortgage agreements between Plaintiffs, Class members, and Wells Fargo.

SECOND AMENDED CLASS ACTION
COMPLAINT- 37

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

141.    The Agreement provided the Coordeses and Class members with the right to reinstate after acceleration and required Wells Fargo to provided notice of the ability to cure a default. Exhibit A at ¶ 22.

142.    As set forth herein, Wells Fargo admits that modification would cure a default and that the purpose of modification was to cure default so that a homeowner could stop foreclosure. Among other statements, Wells Fargo stated:

A.    That the purpose of the loan modification programs was to "attempt to prevent foreclosure by getting the borrower current on delinquent payments and restructuring the mortgage loan terms in order to make the payments affordable to the borrower."  Wells Fargo Bank, "Home Preservation Application Overview," Nov. 1, 2011 (*submitted as* Exh. 12 to Declaration of Michael Schrag in Support of Plaintiffs' Motion for Class Certification, *Hernandez v. Wells Fargo Bank, N.A.*, No. 3:18-cv-07354-WHA (N.D. Cal. Aug. 29, 2019), ECF No. 138).

B.    That Wells Fargo "trained professionals" were available to assist borrowers who had missed mortgage payments "in bringing your loan current … [and] will work with you to determine the best option available to you." Plaintiffs' Second Amended Complaint, para. 188, *Hernandez v. Wells Fargo Bank, N.A.,* No. 3:18-cv-07354-WHA (N.D. Cal. Aug. 19, 2019), ECF No. 137.

C.    That mortgage modification could cure a default and bring a loan current.

D.    That mortgage assistance programs may assist borrowers in default "in bringing your loan current …. This program, known as a loan modification, would provide you with the opportunity for a fresh start…". Order on Plaintiffs' Motion for Leave to Amend, p. 3 , *Hernandez v. Wells*

SECOND AMENDED CLASS ACTION COMPLAINT- 38

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Fargo Bank, N.A.,* No. 3:18-cv-07354-WHA (N.D. Cal. Aug. 19, 2019), ECF No. 136; Plaintiffs' Second Amended Complaint, para. 190, *Hernandez v. Wells Fargo Bank, N.A.*, No. 3:18-cv-07354-WHA (N.D. Cal. Aug. 19, 2019), ECF No. 137.

143.   Wells Fargo has taken the position, in short, that the purpose of mortgage modification is to cure a default and to have the enforcement of the Agreement discontinued upon acceleration.

144.   Wells Fargo frustrated and interfered with the Coordeses' and Class members' ability to perform under the Agreement and failed to cooperate with the Coordeses' and Class members' performance of the contract.

145.   Wells Fargo further breached the implied covenant of good faith and fair dealing in its Agreements with Plaintiffs and the Class members by failing to tell Plaintiffs and the Class that a correct modification decision was impossible under the circumstances, given the software errors at issue in this litigation.

146.   As Plaintiffs and Class members know now, because of errors on the Bank's side, a successful, properly decisioned mortgage modification was not possible for Plaintiffs and the Class.  This is so because the Bank admitted much later, in letters like the one attached as Exhibit C, that "[w]e based our decision on a faulty calculation, and we're sorry.  If it had been correct, you would have been approved for a trial modification."

147.   Wells Fargo likewise engaged in conduct that was contrary to the spirit of the contract and the Coordeses' and Class members' rights thereunder. Wells Fargo lacked diligence in performing its duties, acted recklessly in its servicing of the Coordeses' and Class members' mortgages, and abused its power in denying a modification that would have cured the Coordeses' and Class members' default.

SECOND AMENDED CLASS ACTION
COMPLAINT- 39

148.    By arbitrarily denying a modification without regard to the merit of an application, moreover, Wells Fargo engaged in conduct that was contrary to the spirit of the contract, lacked diligence, and constituted an abuse of its power.

149.    As a result of the Bank's breaches of the covenant of good faith and fair dealing, Plaintiffs and the Class members were injured. Their damages include, but are not limited to, the loss of their homes, including loss of equity, lost appreciation of the homes as an asset, and loss of time and money invested in their homes; payment of fees and penalties; loss of tax benefits, favorable interest rates, or other favorable loan terms; loss of time and money spent in an effort to avoid foreclosure; damage to their credit including increased borrowing costs; moving expenses and the loss of time required to locate new housing and relocate; and housing costs.

## THIRD CAUSE OF ACTION
### Violation of the Consumer Protection Act, RCW 19.86, *et seq.*
### Asserted on Behalf of Plaintiffs and the Washington Class

150.    Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

151.    Plaintiffs bring this claim on behalf of the Washington Class.

152.    The Consumer Protection Act is codified at RCW 19.86 *et seq.* (CPA). The CPA establishes a comprehensive framework for redressing consumer protection violations. As Washington consumers, the Coordeses and Washington Class members can enforce the CPA and recover damages. RCW 19.86.090. The conduct at issue in this case falls within the scope of the CPA.

153.    The claims arise from "consumer transactions" that impact the "public interest" within the meaning of RCW 19.86.093.

154.    Wells Fargo's misconduct in mortgage servicing is well documented

SECOND AMENDED CLASS ACTION
COMPLAINT- 40

and there is a reasonable likelihood of future misconduct, as part of a generalized course of conduct, pattern, and practice in the course of its business.

155.    Alternatively, the claims are "private disputes" that impact the "public interest" within the meaning of RCW 19.86.093.

156.    The Coordeses and Washington Class members and Wells Fargo occupy unequal bargaining positions.

157.    The acts have been "injurious to the public interest" within the meaning of RCW 19.86.093.

158.    Wells Fargo engaged in unfair and/or deceptive conduct by failing to properly develop, test, monitor, and modify its software and to use accurate tools to process mortgage modification applications.

159.    Well Fargo engaged in unfair and/or deceptive conduct by improperly rejecting the mortgage modification applications of the Coordeses and the Washington Class members who qualified for and should have received modification. Wells Fargo further engaged in unfair and/or deceptive acts or practices by making misrepresentations regarding the conduct described in this Complaint and withholding the knowledge of error that triggered the improper rejection of the mortgage modification applications for nearly three years after learning of and correcting the error.

160.    Due to Wells Fargo's unfair and deceptive acts or practices, the Coordeses and the Washington Class members suffered damages, including, but not limited to, the loss of their homes, payment of unjustified fees and penalties, and damage to their consumer credit, limiting their future ability to obtain lines of credit, including mortgages. Wells Fargo should have reasonably known upon discovery of the software error that the resulting harm would continue for several years, yet Wells Fargo withheld the information and did not act to repair the credit

SECOND AMENDED CLASS ACTION
COMPLAINT- 41

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

reports of the Coordeses or Washington Class members or otherwise remedy the wrongdoing.

161.   As a direct and proximate cause of Wells Fargo's unfair and deceptive conduct: (i) the Coordeses and the Washington Class members have sustained and continue to sustain injuries, and (ii) pursuant to RCW 19.86.090, the Coordeses and the Washington Class members are entitled to actual and treble damages in amounts to be determined at trial, attorneys' fees and costs, and all other relief available under the CPA.

**FOURTH CAUSE OF ACTION**
**Defamation**
**Asserted on Behalf of Plaintiffs and the Nationwide Class**

162.   Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

163.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of themselves and the Washington Class.

164.   Wells Fargo made statements to the credit reporting agencies regarding the Coordeses and the Class members that were derogatory to the credit of the Coordeses and the Class members and defamatory.  The negative and derogatory information reported by Wells Fargo to the credit reporting agencies was that the Coordeses and the Class members had experienced a foreclosure.

165.   The reporting of a foreclosure has a serious detrimental effect on credit. The reporting of a foreclosure is taken as an indication of poor creditworthiness.  The reporting of a foreclosure, upon information and belief, reduces one's credit score between 85 to as much as 160 points.

166.   Wells Fargo's reporting of a foreclosure against the Coordeses and the Class members had a serious and detrimental effect upon the credit and the

SECOND AMENDED CLASS ACTION
COMPLAINT- 42

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

creditworthiness of the Coordeses and the Class members. Upon information and belief, Wells Fargo's reporting of a foreclosure against the Coordeses and the Class members reduced their credit scores substantially.

167.  The effect of Wells Fargo's reporting of a foreclosure against the Coordeses and the Class members was not transitory.  Upon information and belief, a foreclosure remains on a consumer's credit report for seven years. Wells Fargo's reporting of a foreclosure against the Coordeses and the Class members therefore resulted in long-term damage to the credit, creditworthiness, and credit scores of the Coordeses and the Class members.

168.  Wells Fargo's communications to the credit reporting agencies were not privileged communications.

169.  Wells Fargo's reporting of a foreclosure regarding the Coordeses and the Class members was untrue or, in the least, requiring additional information so as to make the reporting of a foreclosure not misleading. The communication of a foreclosure created a false impression that would be contradicted by the inclusion of omitted facts.

170.  Wells Fargo concedes that the foreclosure was not correct and that, at the least, Plaintiffs and Class members should have been approved for a trial modification that could have avoided foreclosure. Therefore, the reporting of a foreclosure was false or at least gave a misleading impression that would have been contradicted by including the omitted facts of the circumstances of the foreclosure.

171.  Wells Fargo wrote to Plaintiffs and to Class members as follows, showing the untrue and misleading nature of the reporting of a foreclosure: "We have some difficult news to share.  When you were considered for a loan modification, you weren't approved, and now we realize that you should have

SECOND AMENDED CLASS ACTION
COMPLAINT- 43

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

been." As set forth herein, Wells Fargo admits that the purpose of a modification is to avoid foreclosure.

172.   Wells Fargo's reporting of a foreclosure was reckless at the time that it was made and, upon information and belief, the reporting of a foreclosure was knowingly false not later than 2013. Yet, Wells Fargo failed to take any action to correct its false statements and allowed reports of foreclosure that it knew to be false to tarnish the credit of the Coordeses and Class members for years.

173.   Upon information and belief, Wells Fargo knew or should have known that there were flaws in its mortgage modification application software as early as 2011 and before the time it foreclosed upon the Coordeses' home in 2012. Wells Fargo thereby acted recklessly and maliciously.

174.   As set forth herein and in Exhibits D to I hereto, the OCC and the Board of Governors of the Federal Reserve warned Wells Fargo and its parent in 2011 that, *inter alia*, the Bank was engaged in "unsafe or unsound practices in residential mortgage servicing and in the Bank's initiation and handling of foreclosure proceedings." The Comptroller advised the Bank that it had failed to devote sufficient resources to the administration of its foreclosure processes, failed to perform adequate oversight, risk management, and audit of those processes, and failed to adequately oversee third-party vendors. The Comptroller, furthermore, specifically required the implementation of "processes to ensure that all fees, expenses, and other charges imposed on the borrower are assessed in accordance with the underlying mortgage note" and applicable legal requirements. Therefore, by the time of the 2012 foreclosure of the Coordeses' home, Wells Fargo was on notice to correct deficiencies with respect to the calculation of fees charged to borrowers and its failure to do so was reckless and therefore malicious.

SECOND AMENDED CLASS ACTION COMPLAINT- 44

175.    Further, upon information and belief, Wells Fargo knew that there were flaws in its mortgage modification application software as early as 2013, which specifically resulted in the sort of erroneous denials of modifications at issue in this case.  As set forth herein, Wells Fargo's internal documents show that the software error resulting in claims herein was reported to Wells Fargo and known within the organization no later than 2013. Upon information and belief, Wells Fargo therefore knew or should have known that it had wrongly denied applications for mortgage modifications, including that of the Coordeses, by that time.

176.    Once Wells Fargo knew or should have known that it had wrongly denied applications for mortgage modifications, Wells Fargo's report of the Coordeses' and the Class members foreclosures to credit reporting agencies was not only recklessly untrue, but willfully so.  At that point, Wells Fargo was required to disclose information or to make corrective statements to make the statement that the Coordeses' and the Class members had been subject to foreclosure not misleading.

177.    Therefore, Wells Fargo's statements to credit reporting agencies with respect to the foreclosure of the Coordeses and Class members were both recklessly malicious at the time they were made, and willfully malicious once Wells Fargo knew or should have known that it had wrongly denied applications for mortgage modifications. Wells Fargo's report that the Coordeses and the Class members had experienced foreclosure was thus a defamatory communication made with malicious and/or willful intent not subject to preemption by the Fair Credit Reporting Act.

178.    Further, Wells Fargo willfully, or at recklessly, failed to correct its statements regarding the Coordeses and the Class members, and to correct the

SECOND AMENDED CLASS ACTION
COMPLAINT- 45

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

wrong information that it had provided to the credit reporting agencies. It did this with the knowledge of the serious impacts this inaction would have on the Coordeses and the Class members.

179.    The Coordeses and the Class members were left to deal with a foreclosure on their credit because they were not offered a mortgage modification due to Wells Fargo's misconduct, a serious derogatory credit item which caused the Coordeses and the Class members damage.

180.    As a result of the Bank's defamatory statements affecting their credit, Plaintiffs and Class members suffered damages in an amount subject to proof, including loss of time and money spent in an efforts to repair their credit; loss of favorable interest rates or other favorable loan terms; damage to credit; opportunity costs due to damaged credit or higher costs of borrowing.

## VIII.  REQUEST FOR RELIEF

181.    The Coordeses, individually and on behalf of all others similarly situated, request judgments against Wells Fargo as follows:

A.    For an order certifying the Class under Fed. R. Civ. P. 23(b)(2) and 23(b)(3) and appointing the Coordeses as representatives of the Class and appointing the lawyers and law firm representing the Coordeses as counsel for the Class;

B.    Notifying the Class according to Fed. R. Civ. P. 23(c);

C.    Declaring Wells Fargo's actions to be unlawful;

D.    For all recoverable compensatory, statutory, and other damages sustained by the Coordeses and the Class, including disgorgement and all other relief allowed under applicable law;

E.    Granting the Coordeses and the Class awards of restitution and/or disgorgement of Wells Fargo's profits from its unfair and unlawful

SECOND AMENDED CLASS ACTION
COMPLAINT- 46

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

practices described above;

     F.    For injunctive relief, including all available public injunctive relief;

     G.    For costs;

     H.    For both pre-judgment and post-judgment interest on any amounts awarded;

     I.    For treble damages insofar as they are allowed by applicable laws;

     J.    For appropriate individual relief as requested above;

     K.    For payment of attorneys' fees and expert fees as may be allowable under applicable law; and

     L.    For such other and further relief, including declaratory relief, as the Court may deem proper.

## IX.    DEMAND FOR JURY TRIAL

182.    Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED this 1st day of November 2019

By: s/ *Derek W. Loeser*
Derek W. Loeser, WSBA #24274
Gretchen Freeman Cappio, WSBA #29576
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

Chanele N. Reyes, WSBA #46712
**KELLER ROHRBACK L.L.P.**
3101 N. Central Avenue, Suite 1400
Phoenix, AZ 85012

SECOND AMENDED CLASS ACTION
COMPLAINT- 47

Telephone: (602) 248-0088
Facsimile: (602) 248-2822

Alison E. Chase, *pro hac vice*
Matthew J. Preusch, *pro hac vice*
**KELLER ROHRBACK L.L.P.**
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

***Attorneys for Plaintiffs***

SECOND AMENDED CLASS ACTION
COMPLAINT- 48

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**CERTIFICATE OF SERVICE**

I, Derek W. Loeser, hereby certify that on November 1, 2019, I electronically filed the **SECOND AMENDED CLASS ACTION COMPLAINT** with the Clerk of the United States District Court for the Eastern District of Washington using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ Derek W. Loeser
Derek W. Loeser

SECOND AMENDED CLASS ACTION
COMPLAINT- 49